UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE FLYING DOUBLE B, LLC, and
BURGESS BLEVINS, individually and
d/b/a BURGESS BLEVINS
PHOTOGRAPHY,   CASE NO. 08-CV-10375

        Plaintiffs,   PAUL D. BORMAN
           UNITED STATES DISTRICT JUDGE

-vs-

DONER INTERNATIONAL LTD and
W.B. DONER & COMPANY, both
d/b/a DONER and d/b/a DONER DIRECT,

        Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Before the Court is a March 28, 2008 Motion to Dismiss filed by Defendants Doner International Ltd. and W.B. Doner & Company ("Defendant"). (Doc. No. 7). The Flying Double B, LLC and Burgess Blevins ("Plaintiffs") filed a Response on April 28, 2008. The Court held a motion hearing on July 24, 2008. Having considered the entire record, and for the reasons that follow, the Court DENIES Defendant's motion.

I.     BACKGROUND

This diversity case arises from Plaintiffs' allegations that Defendant has breached its contract with Plaintiffs by not returning 351 "chromes," or photographic transparencies, with a value of $1,500 each, delivered to Defendant as part of a photography shoot in 2001.

Pursuant to Fed. R. Civ. P. 12(b)(6), the Court takes the following facts from Plaintiffs' Complaint. The Flying Double B, LLC is a Maryland company with its principal place of

1

business in Maryland. (Compl. ¶ 1). Burgess Blevins, also a resident of Maryland, is the sole owner of The Flying Double B. (*Id*.). Doner International is a Michigan company with its principal place of business in Michigan. (*Id*. at ¶ 2). The W.B. Doner & Company owns the corporate name "Doner." (*Id*.). Doner, among other things, does business in the advertising industry. (*Id*. at ¶ 7).

Plaintiffs allege that Blevins is "an internationally renowned, commercial photographer who has been a professional photographer for over thirty (30) years." (*Id*. at ¶ 6). Plaintiffs and Defendant had an ongoing business relationship where Plaintiff would provide photographic transparencies to Defendant for review and for possible use by its clients. (*Id*. at ¶ 8). Accompanying Plaintiffs' delivery of the "chromes" were "delivery memos," which outlined the terms and conditions for the use of the photographs, their value in the case of loss, and penalties for unauthorized use. (*Id*. at ¶ 9).

Plaintiffs allege that it is customary both in the practice and trade, and in the particular scope of the ongoing relationship between the parties, that "the delivery of chromes to a potential purchaser along with a delivery memo does not transfer any ownership rights in the chromes to a potential purchaser." (*Id*. at ¶ 10). Accordingly, "a delivery memo that accompanies a tender or delivery of chromes to a potential customer describes the terms of the agreement that is created when the customer or potential purchaser accepts delivery of the chromes and takes custody of them." (*Id*. at ¶ 11).

On or before May 31, 2001, the parties entered into an agreement where Plaintiffs would complete a photography shoot for ADT, one of Defendant's clients. (*Id*. at ¶ 14; Compl. Ex. 1, 5/31/01 Purchase Order). Defendant promised to pay Plaintiffs $32,000 for the project. (Compl.

2

¶ 16). Defendant paid $16,000 in advance. (*Id*. at ¶ 18). Defendant's purchase order further indicated the following usage rights as to the 356 chromes:

> Usage: One year unlimited collateral and web inclusive in fee
> 2nd year unlimited collateral and web: $6,000

(5/31/01 Purchase Order).

Upon completing the photo shoot, on or about June 12, 2001, Plaintiffs delivered an invoice along with the 356 chromes to Defendant's Maryland office for the remaining $15,942.73 on the purchase order. (Compl. Ex. 2, 6/12/01 Invoice). The delivery memo, addressed to Don Schrameks of Defendant, stated the following "terms":

> Count shall be considered correct if copy is not received by return mail. Check the count. Photographs may not be reproduced, copied, projected on publicly displayed without signed permission on photographer's or representative's licensing agreement. Reimbursement in case of loss or damage shall be determined by each item's reasonable value, which client and photographer agree is the amount(s) indicated above. At anytime after the end of the agreed holding period, in the event of failure to return photographs, photographer shall have the right to demand immediate payment in full of this amount.
>
> The submission is conditioned on return of all items undamaged, unaltered and unretouched. Client (name above) assumes all risk for the items listed above from time of receipt by client to time or receipt by photographer or representative, please take special care in packing them for return. Do request a return receipt from your carrier.
>
> Any use of the photograph(s) listed above without written license will be considered willful infringement of copyright.
>
> Creative copyright remains the exclusive property of the photographer.

(Compl. Ex. 3, 6/12/01 Delivery Memo). The delivery memo listed 356 chromes with a value of $1,500 per chrome. (*Id*.). The copy of the delivery memo included with the Complaint is unsigned by Defendant. (*Id*.). Plaintiffs maintain that Defendant's acceptance of delivery of the chromes constitutes an acceptance of the memo's terms. (Compl. ¶ 24). Plaintiffs state that

3

"[p]ursuant to the custom and usage of trade in the photographic and advertising industries and the prior course of dealing between the parties, the plaintiffs retained ownership of the chromes." (*Id*. at ¶ 20).

At some time in 2004, Defendant closed its Maryland office. (*Id*. at ¶ 27). Plaintiffs maintain that the 356 chromes must have been transferred to Defendant's Michigan home office. (*Id*.).

On October 28, 2004, Defendant, from its Southfield, Michigan office, issued a purchase order for five of the images from the ADT shoot, at a total price of $12,000. (Compl. Ex. 5, 10/28/04 Purchase Order). The purchase order stated that usage of the images would be worldwide, unlimited, and with no expiration date, and that "[a]ll rights retained by Agency. Artist retains rights for self-promotion only." (*Id*.). Plaintiffs' November 3, 2004 invoice stated: "Usage: all usage rights retained by agency for 5 ADT images listed. Copyright and self-promotion retained by the photographer." (Compl. Ex. 4, 11/3/04 Invoice).

During November 2005, Plaintiffs inquired as to the status of the 351 chromes remaining in Defendant's possession. (*Id*. at ¶ 30). Defendant responded that they could not find the chromes. (*Id*.). Plaintiffs allege that they have sought the return of the outstanding chromes on repeated occasions, to no avail. (*Id*.).

On January 25, 2008, Plaintiffs filed the instant Complaint in this Court, asserting the following causes of action:

    Count I:    Breach of Contract
    Count II:   Negligence

Plaintiffs seek $526,500 in damages – or 351 times the $1,500 assigned value of each chrome.

On March 28, 2008, Defendants filed the instant Motion to Dismiss, arguing: (1) the

4

Uniform Commercial Code ("UCC") Article 2 governs the instant dispute; (2) the UCC's statute of limitations principle bars Plaintiffs' claims; (3) the UCC's statute of frauds provision bars Plaintiffs' claims; and (4) the economic loss doctrine bars Plaintiffs' negligence claim.

## II. ANALYSIS

### A. Motion To Dismiss Standard under Fed. R. Civ. P. 12(b)(6)

The United States Court of Appeals for the Sixth Circuit has clarified the post-*Twombly* formulation of the standard of review for a motion to dismiss:

> "The Supreme Court has recently clarified the pleading standard necessary to survive a Rule 12(b)(6) motion." Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." "In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal citations omitted).

### B. Breach of Contract Claim

Defendant contends that its alleged failure to return the chromes to Plaintiffs implicates the UCC, since the parties' arrangement was for a "sale of goods." Defendant's position is that under Article 2 of the UCC, Plaintiffs' breach of contract claim accrued as of 2001 – consequently, the UCC's four-year statute of limitations bars Plaintiffs' action. In addition, Defendant argue that Plaintiffs did not bring their instant action in a "commercially reasonable

5

period of time." Lastly, Defendant further contends that since Plaintiffs do not allege that Defendant signed the delivery memo, the statute of frauds bars their claims.

Plaintiffs respond that Article 2 of the UCC does not apply, since the transaction did not qualify as a "sale of goods," and did not contemplate the passage of title of the physical transparencies. Per Plaintiffs, although the May 31, 2001 purchase order permitted Defendant to enjoy a two-year unlimited print and web use of the images contained in the transparencies – that use, and any further use of the transparencies, was and would be subject to a licensing agreement. (*Id*.).[1] In fact, Defendant eventually agreed to purchase unlimited usage rights of five particular images.

Consequently, Plaintiffs assert that Michigan's general six-year breach of contract statute of limitations controls. *See* Mich. Comp. Laws. § 600.5807(8). Under Michigan law, "a breach of contract claim accrues 'at the time the wrong upon which the claim is based was done regardless of the time when damage results.'" *Scherer v. Hellstrom*, 270 Mich. App. 458, 463 (2006) (quoting Mich. Comp. Laws § 600.5827).

Article 2 of the UCC, codified at Mich. Comp. Laws § 440.2101 *et seq*., applies in the following situation:

> Unless the context otherwise requires, this article applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this article impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.

Mich. Comp. Laws § 440.2102. Section 440.2103 provides the following definitions.

---

[1] Plaintiff points out that under copyright law, an ownership interest in the copyright itself is distinct from the work's physical embodiment. *See* 17 U.S.C. § 202.

> (a) "Buyer" means a person who buys or contracts to buy goods.
>
> . . . .
>
> (c) "Receipt" of goods means taking physical possession of them.
>
> (d) "Seller" means a person who sells or contracts to sell goods.

Section 440.2105, in relevant part, further defines "goods":

> (1) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action. . . .
>
> (2) Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are "future" goods. A purported present sale of future goods or of any interest therein operates as a contract to sell.
>
> (3) There may be a sale of a part interest in existing identified goods.

Other than citing general UCC provisions, the parties have not produced any case law, from Michigan or any other jurisdiction, specifically addressing Plaintiffs' allegations that photographer's provision of photographic transparencies for a potential licensing agreement does not amount to "sale of goods."

The Court finds instructive the Connecticut Superior Court case *Kane v. Federal Express Corp.*, No. 99-0078971S, 2001 WL 1178350 (Conn. Super. Ct. Aug. 28, 2001) (unpublished). Plaintiff Kane was a photographer who had shipped photographic transparencies to the defendant "to review for use in its greeting card collection." *Id.* at *1. However, the delivery service lost the transparencies in transit. *Id.* The plaintiff then sued both the delivery service and the defendant for the value of the transparencies. *Id.* The plaintiff argued for recovery under two theories: (1) that the UCC placed the risk of loss on the defendant; and (2) bailment. The

7

Connecticut court reasoned that the plaintiff's arrangement to deliver transparencies to the defendant did not constitute a "sale of goods" under Article 2 of the UCC:

> The plaintiff sought to enter into a license agreement with the defendant whereby the defendant could reproduce certain photographic transparencies owned by the plaintiff. The transaction cannot be characterized as a sale because it does not contemplate the passage of title from the plaintiff to the defendant. Moreover, licenses are not "goods" as defined in Article Two because they are not movable or tangible. The language of the section of Article Two pertaining to risk of loss requires both a seller and the shipment of goods.
> . . . .
> Here, the plaintiff sought to sell a license to reproduce the images contained on the transparencies but not the actual transparencies. Incidents of ownership including the right to produce and sell more copies and the right to license the use of a work to others are "incidents of the intellectual, intangible component of . . . . property." While transparencies may be considered goods because they are movable, the essence of the contract in the present case is for the use of the image contained on such transparencies. The transaction, then, was not for goods but for intangibles. Although leases and licenses are similar in that they both convey an interest in property, the present transaction cannot be characterized by one in goods and Article Two is not applicable by analogy.

*Id.* at *2-3 (internal citations and footnotes omitted). Other courts have generally recognized that agreements granting licenses to use intellectual property do not fall under the Article 2's "sale of goods" scope. *See, e.g., Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 432 (S.D.N.Y. 1996) (holding that Article 2 did not apply when the parties' agreement implicated "a transfer of intellectual property rights," rather than a grant of software use rights). The Court finds the reasoning in *Kane* persuasive.

Under Rule 12(b)(6), the Court must construe a complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Bassett*, 528 F.3d at 430. Furthermore, under the rule, the Court can properly consider the documents attached the Complaint, since they are both central to and referred to in the Complaint. *Id.*

Plaintiffs insist that in 2001 they were not selling the physical transparencies themselves – rather they were simply providing Defendant the opportunity to review the transparencies so that Defendants could purchase a license to reproduce those images. Viewing the documents in the light most favor to the non-moving party, the Court agrees that the 2001 transaction contemplated a licensing arrangement, rather than a sale of goods under the UCC.

First, Defendant's purchase order indicates on its face that it was buying a two-year right to use the 356 images on the web and in print. Additionally, the June 12, 2001 invoice and delivery memo both indicate Plaintiffs' intent to send the transparencies to Defendants for evaluation in anticipation of Defendants' possible purchase of those rights. Specifically, the June 12, 2001 invoice indicates that "[c]reative copyright remains the exclusive property of the photographer. <u>Rights granted only upon full payment of the final invoice</u>." (6/12/01 Invoice) (emphases in original). Furthermore, the delivery memo evinced an intent that Defendants did not have the right to reproduce, copy, project, or publicly display the images contained in the transparencies without a license. (6/12/01 Delivery Memo). Finally, even Defendant's own 2004 purchase order lends support to Plaintiffs' theory by including information indicating the scope of their usage rights – "worldwide" and "unlimited" usage, with no expiration date. (10/28/04 Purchase Order). The purchase order also placed a check mark in the box entitled "All rights retained by Agency. Artist retains rights for self-promotion only." (*Id.*).

In short, the Court concludes that the UCC's statute of limitations does not bar Plaintiffs' instant breach of contract claim.[2] As a result, Defendant's arguments that the UCC's statute of

---

[2] At the motion hearing, counsel for Defendant raised an additional argument, not contained in its briefing, that even if the UCC does not govern the instant transaction, Michigan's general statute of frauds, Mich. Comp. Laws § 566.132, bars Plaintiff's

frauds provision bars Plaintiffs' claim similarly fails.

Accordingly, the Court DENIES Defendant's motion to dismiss the breach of contract claim.

**C.     Negligence Claim**

Defendant contends that Plaintiffs' negligence claim fails as a matter of law since the Complaint does not allege a breach of a legal duty distinct from the breach of contract.

The Michigan Court of Appeals in *Sherman v. Sea Ray Boats, Inc.*, 251 Mich. App. 41 (2002), has succinctly stated the relevant principle:

> It has often been stated that the sometimes hazy distinction between contract and tort actions is made by applying the following rule: if a relation exists that would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise it will not.

*Id*. at 49 (citing *Hart v. Ludwig*, 347 Mich. 559, 565 (1956)).

*Sherman* later reiterated:

> Thus, Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established.

251 Mich. App. at 52.

Plaintiffs ground their negligence claim in the fact that Defendant failed to safeguard and return the chromes under the terms of the agreement. (Compl. ¶¶ 35-36). Defendant point out that Plaintiffs have failed to allege a breach of an independent legal duty owed to them by Defendant, apart from the breach of the agreement itself.

---

breach of contract action. The Court will not consider this newly-raised argument without the benefit of argument from the other party, for the purposes of the instant motion to dismiss.

However, the Court finds that dismissing Plaintiffs' negligence claim at this point would be premature. If Defendant contends, for example, that the parties never entered into an enforceable agreement, then Plaintiffs could possibly argue that they are entitled to recovery under a negligence theory. The Court holds that resolving the propriety of a negligence claim in this context would be best addressed on a motion for summary judgment, after the parties have had an opportunity to conduct discovery.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 28, 2008

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 28, 2008.

s/Denise Goodine
Case Manager